# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:18-cr-00395-TWP-DLP-4 |
| CHRISTOPHER RADFORD, | ) ) ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant Christopher Radford's ("Radford") Motion to Suppress ([Filing No. 105](#)). Radford is charged with violating 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)—possession with intent to distribute a controlled substance. He seeks to suppress all evidence obtained from his person and vehicle as the result of a warrantless search during a traffic stop. Radford asserts that the traffic stop and the search and seizure of his vehicle and person was made without probable cause and in violation of his Fourth Amendment rights, justifying suppression of the evidence found during the search. On December 3, 2019, an evidentiary hearing was held on Radford's Motion. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law and determines that the Motion to Suppress should be **denied**.

## I. FINDINGS OF FACT

Corporal John Maples ("Corp. Maples"), a fifteen (15) year veteran of the Brownsburg (Indiana) Police Department ("Brownsburg PD") has worked narcotics investigations for approximately twelve (12) years. In November 2018, Corp. Maples was a supervisor of Brownsburg PD's street crimes unit—a unit that enforces traffic laws in pursuit of criminal activity

while in transit. A part of his assignment was to conduct traffic stops to investigate drug trafficking on major routes that pass through Brownsburg, Indiana. During his career with Brownsburg PD, Corp. Maples estimates that he has conducted "hundreds, if not thousands" of traffic stops. On Monday, November 19, 2018, Corp. Maples was assisting the Drug Enforcement Administration ("DEA") and Task Force Officers in the vicinity of Rockville Road and Bridgeport Road near the border between Indianapolis and Avon, Indiana. Corp. Maples had been informed by DEA surveillance units that a white Audi had just departed a suspected drug house where DEA and other investigators were conducting surveillance.

At approximately 2:15 p.m., Corp. Maples was monitoring traffic in his marked police cruiser from an LA Fitness parking lot on the north side of Rockville Road. DEA surveillance units advised over the radio that the white Audi that was the focus of their narcotics investigation, had pulled into an Auto Zone store, then through a gas station lot and into a strip mall just east of his location on Rockville Road and the Audi was traveling west on Rockville Road. Corp. Maples had traveled to the traffic light at the end of the access road of the LA Fitness parking lot when observed the Audi pass his location traveling at approximately 40 to 45 miles per hour and following the car in front of it by less than one car length. Upon observing what he believed to be a traffic infraction of following too closely, Corp. Maples decided to make a traffic stop to issue a written warning, and determine if the driver was properly licensed or has existing warrants. Corp. Maples pulled into the flow of traffic and activated his dashboard camera. The remaining interactions can be seen in the video from the dashboard camera from Corp. Maples' police car.

The Audi was stopped at a red light at Rockville Road and Raceway Road. Corp. Maples approached the vehicle in his marked squad car and located himself behind the Audi. As the Audi began to turn into a PNC bank parking lot, Corp. Maples activated his overhead lights. The Audi

pulled into a parking space and Corp. Maples positioned his vehicle behind the Audi where the vehicle could not leave. Corp. Maples approached the passenger side window of the Audi and made contact with the driver. The driver of the vehicle, who was later determined to be Radford, had not observed the activated lights and was unaware that he was being stopped by a police officer. Radford began to open the door of the Audi and was surprised when Corp. Maples pulled the door open. Radford had a cellular telephone in his hand and Corp. Maples instructed him to put the phone on the dashboard and exit the vehicle. Radford hesitated and did not initially comply. Radford then attempted to hold onto a second cellular telephone. A second command was given and Radford complied. As Radford exited the Audi, he responded to Corp. Maples' questions and denied having any firearms. Radford is moving around and appears nervous and places his left hand close to his belt line and gestures as if attempting to pull up his pants. Corp. Maples, concerned for officer safety, instructs Radford to "stop moving around" and "stop reaching" because "you make me nervous." As Corp. Maples begins to conduct a pat down Radford's left arm tensed up and he attempted to keep his arm close to his body. Corp. Maples advised Radford multiple times to relax and loosen up his arms. Corp. Maples then placed a grip on the back of Radford's left arm to prevent him from being able to retrieve any items from his belt line or pocket. When Corp. Maples pulled Radford toward him, he observed a clear vacuum-sealed package containing what Corp. Maples believed to be heroin. Radford was then placed in handcuffs for his safety and officer safety. (Filing No. 106-4 at 1-2.)

After Radford was secured, a search of his person and vehicle revealed a firearm in the driver side door pocket, the suspected heroin tested positive for Fentanyl and Radford had an outstanding warrant out of Boone County for operating a vehicle being a life time habitual traffic violator. (Filing No. 106-4 at 2.)

3

## II. DISCUSSION

In his Motion to Suppress, Radford asserts that the evidence obtained against him as a result of the traffic stop and the subsequent warrantless search of his vehicle violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. ([Filing No. 105](#).) Specifically, he argues that (1) Corp. Maples lacked probable cause to conduct the traffic stop; and (2) the warrantless search of his person and vehicle was not supported by probable cause. In contrast, the Government asserts that Corp. Maples had probable cause for the stop and that the video of the traffic stop demonstrates sufficient probable cause for the pat down and subsequent search of Radford's person and vehicle. Because the material facts at issue are disputed, the Court must make a credibility determination on the evidence presented.

### A. **Need for a Hearing.**

Both parties requested a hearing on the Motion to Suppress. "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). Radford raised disputed issues of material fact, therefore an evidentiary hearing was held on December 3, 2019.

### B. **Validity of the Stop.**

Radford moves to suppress the evidence seized from the traffic stop. He denies committing any traffic violations and asserts that at all times he operated his vehicle in a safe manner, the traffic stop was pretext and the resulting search of his person and vehicle was unreasonable and improper.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment

prohibits a warrantless search unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). When an officer effectuates a traffic stop and detains a person, no matter the length of time, it constitutes a "seizure" of "persons" under the Fourth Amendment, and thus must be reasonable. *Whren v. United States*, 517 U.S. 806, 810 (1996). The court in *Whren* explained that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.*

Similar to the protections afforded by the Fourth Amendment, the purpose of Article 1, Section 11 of the Indiana Constitution "is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). While Section 11 is virtually identical to the Fourth Amendment, Section 11 is given its own independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). When determining whether a search or seizure violates Section 11, courts evaluate "the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). The government bears the burden of showing that the search was reasonable under the totality of the circumstances. *Mitchell*, 745 N.E.2d at 786.

Radford asks the Court to suppress all evidence obtained by the Government as a result of its pretextual stop and warrantless search of his person and vehicle. Radford denies committing any traffic infractions on November 19, 2018. He notes that the posted speed limit in this particular section of Rockville Road was 45 miles per hour. (Filing No. 106 at 1.) He asserts that the traffic

lights and flow of traffic that day prevented him from going more than 30 miles per hour and he did not follow any car too closely. Radford has presented evidence that the LA Fitness parking lot is several hundred feet north of Rockville Road, and he contends that Corp. Maples' view to Rockville Road would have been obstructed by adjacent business on the south side of the parking lot, as well a tree line on the immediate east of the parking lot. He contends the visual obstructions between the LA Fitness parking lot and Rockville Road cast doubts on the ability of Corp. Maples to observe a traffic infraction and his failure to activate his dash cam so as to produce a videotape of the infraction is evidence of the pretextual traffic stop. Radford argues that the infraction of following too closely is subjective and there are virtually no standards, guidelines or definitions surrounding this traffic violation and the Government has failed to meet their burden of showing that a traffic infraction occurred.

Police may not use a traffic stop as a pretext to search for evidence. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995). However, "if there was probable cause to make the stop, and if the stopping officer was acting with authority, the stop was not pretextual. 'So long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional.'" *Id.* (quoting *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989)). Additionally, the Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law. *Whren*, 517 U.S. at 810. Radford's counsel does not dispute that it is legally permissible for law enforcement to target, observe, or follow a vehicle that is being surveilled for suspected drug activity and to wait until they observe a traffic infraction so that they can have probable cause to stop the vehicle to either issue a traffic warning and determine whether the driver is properly licensed or has existing warrants.

Although the following too closely statute is subjective, Corp. Maples – a 15 year veteran of the Brownsburg PD, and member of the narcotics trafficking drug unit – has presented sufficient evidence that he had probable cause to stop Radford because he was following another vehicle too closely. A person who drives a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time interval between vehicles, and the condition of the highway. Ind. Code § 9-21-8-14. Corp. Maples presented evidence that he has years of experience in conducting over one thousand traffic stops, including narcotics traffic stops. He explained that the dashboard camera was a brand new system, and that this was the first traffic stop that he'd made with this system. The system was set up so that "once the lights are activated, it would go back approximately one minute, and then that's when it would begin recording." Because of the timing of his observation, the overhead lights were not yet activated, and the camera did not record the actual traffic infraction. This explanation of why the infraction was not videotaped is credible. Radford's argument that Corp. Maples view of Rockville Road was obstructed is unavailing. Hr. Exhibits 2, 3 and 4 provide photographic evidence of the area and from Corp. Maples' vantage point, and show that he could clearly observe the white Audi as it traveled on Rockville Road. In judging the credibility of Radford's assertions that he did not commit any traffic infraction, the Court considers the evidence that Radford has been pulled over 15 times between December 22, 2003 and June 30, 2012 and each of those instances he was charged with a criminal traffic offense. Moreover, it is not uncommon that motorists follow the car ahead of them less that a full car length, and it is reasonable to believe that an officer with experience in making narcotics traffic stops would wait until he observes a traffic violation to initiate the stop. The Government has met its burden of sowing by a preponderance

of evidence that Corp. Maples observed Radford commit what he described as a minor traffic infraction and thus had probable cause to initiate a traffic stop.

C. **The search of Radford's person was reasonable.**

The United States Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those exceptions, a pat down search for officer safety, applies in this case. Under *Terry v. Ohio*, 392 U.S. 1 (1968), a person may be stopped for brief questioning and a pat-down search without a warrant if two conditions are met. First, the officer must be able to point to "'a reasonable suspicion of criminal activity.'" *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996) (internal citations omitted). "Reasonable suspicion" is "'a quantum of proof less demanding than probable cause,'" *id*., but a "'hunch' will not suffice." *Id*. The officer must be able to set forth "specific and articulable facts." *United States v. Johnson*, 170 F.3d 708, 713 (1999) (internal citations omitted). Second, the rationale of the *Terry* pat-down is self-defense or defense of others. To justify a warrantless pat-down search without probable cause, the officer must also be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others. *Id*. (citing *Terry*, 392 U.S. at 26–27). Whether an officer has a reasonable suspicion . . . is a fact-specific inquiry that looks at the totality of the circumstances in light of common sense and practicality." *United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011) (quotation marks omitted). Furthermore, an officer need not be certain that the suspect is armed, as long as the officer has a reasonable belief that his safety or the safety of others is at risk. *Terry*, 392 U.S. at 27.

Radford contends that the Government is unable to meet their burden to show that an exception to the warrant rule applies justifying the search and seizure of his person and the vehicle. He argues there were no exigent circumstances to justify the officer's warrantless search and that Corp. Maples' actions that day are indicative of the true pretextual nature of this encounter. ([Filing No. 106 at 4](#).)

The Court has found that Corp. Maples had probable cause that Radford had committed a traffic infraction justifying his temporary detention. Under these circumstances, the Government argues the analysis for a *Terry* stop is unnecessary. The question becomes what specific and articulable facts the arresting officer justifies a *Terry* search or "pat-down" by Corp. Maples. The Government contends that under the totality of the circumstances, there is ample justification for the search.

Here, Corp. Maples, a seasoned narcotics detective, was informed by DEA officers that the Audi had just departed a suspected drug house, which heightened the officer's safety concerns. An officer need not be certain that the suspect is armed, as long as the officer has a reasonable belief that his safety or the safety of others is at risk. *Terry*, 392 U.S. at 27. The video clearly shows that once Corp. Maples approached the car, Radford was making quick movements as the car door was opened and he attempts to secure or use his two cell phones. Radford admits that he was surprised that an officer was at his car door. His actions were nervous and at times noncompliant. He continued to manipulate objects in the car. Once he exited the Audi, he continued to tense his left arm and keep it near his belt line. He attempted to pull up his pants which again caused his hands to go towards his belt line. Radford's behavior caused Corp. Maples, in the totality of the circumstances in light of common sense and practicality, legitimate concerns.

As the two men engaged, Corp. Maples noticed a clear, vacuum-sealed package on

Radford's person. The Government argues persuasively, that while the pat-down search of Radford was based upon specific and articulable facts that he might be armed, the Fentanyl was not recovered as a direct result of that *Terry* search. To the contrary, when Radford was turned around to face Corp. Maples, the vacuum-sealed package that he believed to be heroin, was visible in Radford's jacket pocket. Because Corp. Maples had made a lawful traffic stop, and the incriminating nature of the package was immediately apparent, the search and seizure was lawful. Under the totality of circumstances, these facts are sufficient probable cause for the pat down and subsequent search and seizure of evidence.

### III. CONCLUSION

For the reasons set forth above, the Court **DENIES** Radford's Motion to Suppress ([Filing No. 105](#)).

**SO ORDERED.**

Date: 12/6/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles C. Hayes
HAYES RUEMMELE LLC
charleshayes.atty@gmail.com

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov